| | |
|---|---|
| DISTRICT COURT, COUNTY OF EL PASO, COLORADO<br>270 South Tejon Street<br>Colorado Springs, CO 80901<br>719-452-5000 | DATE FILED: March 31, 2017 4:57 PM<br>FILING ID: C83D1DE483DEC<br>CASE NUMBER: 2017CV30846 |
| Plaintiffs:   **DONNA BRYANT ,**<br>v.<br>Defendants:   **ALLSTATE FIRE and CASUALTY INSURANCE COMPANY** | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiff:<br>James Colgan, Esq.#24518<br>Richard Eddington, Esq.#25367<br>The Ramos Law Firm, LLC<br>3000 Youngfield St., Ste. 200<br>Wheat Ridge, CO 80215<br>Phone: (303) 733-6353    Fax: (303) 865-5666<br>James@ramoslaw.com / Rick@ramoslaw.com | Case No.  17CV<br><br><br>Division:<br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff, Donna Bryant ("Mrs. Bryant"), by and through her legal counsel, James Colgan, Esq. and Richard L. Eddington, Esq. of Ramos Law, LLC and files her Complaint against the Defendants as follows:

## VENUE

1. Venue is proper in El Paso County as the Plaintiff is a citizen and resident of El Paso County, State of Colorado.

## PARTIES

2. At all times material to this lawsuit, Plaintiff Donna Bryant was a citizen and resident of the City of Peyton, County of El Paso, State of Colorado.

3. At all times material to this lawsuit, the Defendant Allstate Fire and Casualty Insurance Company (herein after referred to as "ALLSTATE")  was licensed to do business, and was doing business, in the State of Colorado, with its registered agent, the Division of Insurance, 1560 Broadway, and Denver, Colorado 80202.

## GENERAL ALLEGATIONS

4. On or about March 30, 2014, the Plaintiff was traveling eastbound on East Woodmen Road near the intersection of McLaughlin road in El Paso County, State of Colorado. Another party, Rachel Stevens, was traveling west bound near the same intersection.

5. Ms. Stevens negligently attempted to turn left in front of the Plaintiff and caused a significant collision with the Plaintiff.

6. As a direct and proximate cause of Ms. Stevens' actions, the vehicle driven by the Plaintiff, a 2013 Ford e150 disability modified conversion van, was damaged significantly in the front end.

7. As a direct and proximate cause of Ms. Stevens' actions. The Plaintiff has suffered significant bodily injury, significant pain and suffering, physical impairment, and will need substantial medical care in the future.

8. The Plaintiff was not comparatively negligent in the collision.

9. The Defendant issued an insurance policy (#920404531) to the Plaintiff with an effective date of March 14, 2014. The insurance policy included coverage for property damage to the Plaintiff's vehicle and uninsured or underinsured motorist coverage for bodily injury.

10. The Defendant, in adjusting the property damage to the Plaintiff's vehicle, demanded that the vehicle be repaired rather than replace the vehicle at a total loss.

11. The manufacturer of the conversion van, Nor-Cal, did not recommend that the vehicle be repaired. The opinion of the manufacturer was that repair of the van's frame would make the vehicle unsafe for use.

12. The Defendant was made aware of the Van manufacturer's opinion yet decided to repair the vehicle despite the manufacturer's recommendation.

13. The Defendant informed the Plaintiff that it was the Defendant's policy to repair all disability modified vehicles regardless of whether it compromises the safety of the vehicle.

14. The Plaintiff refused to accept the Defendant's solution in repairing the van as she felt that the van was not safe to drive per the manufacturer's recommendations. In addition, the Plaintiff felt that this repaired van would be impossible to re-sell.

15. At all times material to this lawsuit, the Defendant has refused to pay fair market value for the van and determined that the Plaintiff must accept the ill-advised repaired van.

16. On June 24, 2016, the Plaintiff settled her bodily injury claim with the tortfeasor's insurance company for a total of $115,000.00. The Defendant consented to this settlement and granted permission to open a UIM claim.

17. The settlement from the tortfeasor has not made the Plaintiff whole and there are significant uncompensated damages.

18. On July 19, the Plaintiff was informed that ALLSTATE would be conducting a

records review and that Veteran's Administration (VA) records had been ordered.

19. On July 26, 2016 the Plaintiff was informed by ALLSTATE that the Defendant had received over four thousand pages from the VA.

20. On August 01, 2016, the Plaintiff requested ALLSTATE to provide a timetable for the medical records review and for copies of the VA records.

21. On August 16, 2016, the Plaintiff informed the Defendant that the VA records had not been delivered as promised.

22. On August 24, 2016, the Plaintiff requested again to get a timetable on the completion of the medical record review.

23. On August 24, 2016, the Plaintiff requested that the property damage photos be given to the medical record review physician hired by ALLSTATE.

24. On August 24, 2016, the Plaintiff proposed to ALLSTATE that the record review physician speak to Ms. Bryant's treating physicians and offered to sign additional medical authorizations if needed.

25. On August 24, 2016, the Plaintiff informed ALLSTATE that the records from the VA had still not been delivered to the Plaintiff.

26. ALLSTATE responded to the above communications on August 24, 2016 by indicating that the file had been given to Dr. Bernton on August 05, 2016.

27. ALLSTATE further informed the Plaintiff that a medical records review usually takes approximately six weeks.

28. On September 14, 2016, the Plaintiff requested to know the status of the medical record review.

29. On September 16, 2016, the Defendant indicated that the medical record review would be completed by the end of September.

30. On October 04, 2016, ALLSTATE forwarded a written opinion (dated 09/30/16) of Dr. Tashof Bernton to the Plaintiff.

31. ALLSTATE indicated that they did not take the time to review the report prior to forwarding the report.

32. On October 04, 2016, Plaintiff pointed out to the Defendant ALLSTATE that, according to Dr. Bernton's report, he was not provided the notes from Jacino Manon, M.D. (a treating physician of Ms. Bryant).

33. On October 04, 2016, Plaintiff pointed out to the Defendant ALLSTATE that according to Dr. Bernton's report, he was not provided the operative notes and post-operative notes of Dr. Bradley Vilims (a treating physician of Ms. Bryant).

34. On October 04, 2016, the Plaintiff pointed out to the Defendant had failed to provide follow up notes post December 11, 2014 from the pain specialist Dr. Vilims ( a treating physician of Ms. Bryant) to Dr. Bernton.

35. On October O4, 2016 the Plaintiff requested that the items missing be given to Dr. Bernton so that a complete review could be accomplished.

36. On October 17, 2016, the Plaintiff requested a status of providing the additional records to Dr. Bernton.

37. On November 17, 2016, the Plaintiff requested a status of providing the additional records to Dr. Bernton.

38. On November 21, 2016, the Plaintiff left a voicemail for ALLSTATE.

39. On November 22, 2016, the Plaintiff was informed that the original adjuster had been involved in an automobile accident and that a new adjuster was assigned. The new adjuster (Constance Schoenig) asked for time to review the file.

40. On December 15, 2016, the Plaintiff was informed that the new adjuster was Eric Leinberger of ALLSTATE.

41. On December 15, 2016, the Plaintiff repeated the requests made to ALLSTATE on October 04, 2016.

42. The Defendant ALLSTATE made an offer to the Plaintiff on December 16, 2016 of Two Thousand Five Hundred dollars.

43. Allstate made no reasonable effort to explain the offer of December 16, 2016.

44. On December 16, 2016, the Plaintiff requested an explanation from ALLSTATE as to the amounts allotted for past medical damages, future medical damages, past pain and suffering, future pain and suffering, and physical impairment and disfigurement.

45. On January 04, 2017, the Plaintiff requested a follow up on the requests made on October 04, 2016.

46. On January 06, 2017, ALLSTATE adjuster Linda May indicated that the Plaintiff had been fully compensated.

4

47. On January 06, 2016, ALLSTATE adjuster Linda May acknowledged that she had not provided Dr. Vilims' records to Dr. Bernton for his medical record review.

48. On January 06, 2017, ALLSTATE adjuster Linda May acknowledged that she had not provided Dr. Vilims' apportionment of injuries to Dr. Bernton for his medical record review.

49. On January 06, 2017, ALLSTATE adjuster Linda May acknowledged that she had not provided Dr. Vilims' future care opinion to Dr. Bernton for his medical record review.

50. On January 30, 2017, THE Plaintiff sent additional records from Colorado Springs Neurology and asked for a revaluation of the claim.

51. On February 21, 2017, the Plaintiff called Linda May of ALLSTATE and asked for an update on the reevaluation.

52. On February 21, 2017, ALLSTATE replied that they were waiting on a reevaluation from Dr. Lamden.

53. The Plaintiff is unaware of the participation of Dr. Lamden in this case.

54. On March 09, 2017, the Plaintiff requested a status on the reevaluation of the records review.

55. On March 16, 2017, ALLSTATE reiterated its' offer of Two Thousand Five Hundred dollars.

56. On March 16, 2017, ALLSTATE did not give a reasonable explanation for it's offer.

57. The Plaintiff's past medical damages exceed $90,500.00.

58. The Plaintiff's treating physician (Dr. Vilims) has opined that Ms. Bryant will require annual intra-articular injections at the level of the Left C5-C6 with an approximate cost of $6,000.00 per injection.

59. The Plaintiff's treating physician (Dr. Vilims) has opined that Ms. Bryant will require future treatments of a Left C5-C6 medial branch block radio-frequency (RF) thermo-coagulation neurotomy. The medically accepted timeframe between this treatment is somewhere between 263 days and 422 days. The Plaintiff's treating physician opines that this RF treatment has an approximate cost of $14,500 per treatment.

60. The Plaintiff's treating physician (Dr. Vilims) opines that the Plaintiff will need annual intra-articular injections at the Left L5 pseudo joint at an approximate cost of $5.900.00 per treatment.

61. The Plaintiff's treating physician (Dr. Vilims) has opined that follow up therapy to all of the above procedures will cost approximately $1,500.00 annually.

## FIRST CAUSE OF ACTION
## Breach of Contract Against Allstate Fire And Casualty Insurance Company

62. Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 61 above.

63. At all times material to this lawsuit, Defendant ALLSTATE was a corporation authorized to do, and doing business, in the State of Colorado.

64. At all times material to this lawsuit, the Plaintiff Donna Bryant was insured under a statutorily compliant Colorado auto insurance policy issued by Defendant ALLSTATE.

65. Upon information and belief, said policy contained within it a "direct action clause and/or in the alternative provided for the filing of this action."

66. Upon information and belief, the Plaintiff's insurance policy provided for property damage/Auto Collision benefits of **Actual Cash Value** to be made available to the Plaintiff, which policy is believed to be in the possession of Defendant ALLSTATE and which policy was in full force and effect at all times material to this lawsuit.

67. Plaintiff's insurance policy provided for uninsured/underinsured benefits to be made available to Plaintiff, which policy is believed to be in the possession of Defendant ALLSTATE and which policy was in full force and effect at all times material to this lawsuit.

68. During the pendency of the policy, the subject vehicle collision occurred with the resulting injuries as set forth herein.

69. The subject collision gives rise to the payment of benefits for property damage incurred by Plaintiff in the collision with Ms. Stevens on March 30, 2014.

70. The subject collision gives rise to the payment of benefits for underinsured benefits for bodily injury suffered by Plaintiff in the collision with Ms. Stevens on March 30, 2014.

71. As such, when and at such time as an insured such as Plaintiff is injured by the negligent conduct of said driver, such constitutes conduct for which underinsured benefits are applicable to this cause.

72. As of the time of filing this complaint, Defendant ALLSTATE has paid no benefits pursuant to the underinsured benefits available.

73.     As of the time of filing of this complaint, Defendant ALLSTATE has paid no benefits pursuant to the property damage benefits available.

74.     Further, during the pendency of the policy of insurance providing Plaintiff with underinsured benefits, and on March 30, 2014, Rachel Stevens, herein referred to as an underinsured driver, which driver is deemed an underinsured motorist, did so carelessly and negligently operate her vehicle so as to cause same to collide with great force and violence against a vehicle operated by Plaintiff Bryant.

75.     Rachel Stevens was the direct and proximate cause of severe, permanent, and disabling injuries of body, mind, and psyche, as are herein further described.

76.     At all times material hereto, and at the time of the incident complained of, Plaintiff Donna Bryant was operating her vehicle in a reasonable and safe fashion, such that she did not cause or contribute to cause the motor vehicle collision and is neither negligent nor comparatively negligent.

77.     Plaintiff has complied with all conditions precedent to coverage under the insurance policy issued by Defendant ALLSTATE to her.

78.     To the extent that Plaintiff has failed to comply with any of the contractual obligations, Defendant Hartford has not been prejudiced by the failure to comply.

79.     To the extent that Plaintiff has failed to comply with any of the contractual obligations, Defendant ALLSTATE may not rely on this failure to comply because ALLSTATE has breached one or more material obligations under the policy prior to any alleged failure to comply of Plaintiff.

80.     At all times relevant to this action, Defendant ALLSTATE owed to Plaintiff the implied duty of good faith and fair dealing under the insurance contract.

81.     Defendant ALLSTATE has breached its' contract by denying Auto Collision and underinsured motorist benefits under the policy.

82.     As a direct and proximate result of the Defendant's breach of contract, Plaintiff has incurred damages as set forth herein.

## SECOND CAUSE OF ACTION
**Unreasonable Delay And Denial Against Allstate Fire And Casualty Insurance Company Under C.R.S. §10-3-1115 and C.R.S. §10-3-1116**

83.     Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 82 above.

84.     Ms. Bryant provided the Defendant with: 1) her reasonable medical, surgical,

hospital and related physical therapy expenses; 2) the documentation disagreeing with the Defendant's ill-advised decision to repair the disability conversion van; and 3) the non-economic damages necessitated by the March 30, 2014 collision.

85. This documentation was provided in accord with her property damage coverage and underinsured coverage of ALLSTATE policy # 920404531.

86. ALLSTATE has unreasonably delayed and/or denied the claims without providing a full explanation.

87. The denial of first-party covered benefits was without a reasonable basis when the insurer based its' underinsured decision on a record review of a non-treating physician and never examined, interviewed, or tested Ms. Bryant.

88. The denial of first-party covered benefits was without a reasonable basis when the Defendant ALLSTATE placed the Plaintiff in a quandary of either driving a repaired but unsafe vehicle or having no vehicle. The Plaintiff reasonably decided not to place herself or others at risk by refusing to accept and drive the repaired vehicle.

89. Upon information and belief, the Defendant ALLSTATE claimed that it is the policy of ALLSTATE to repair all disability conversion vans regardless of whether the van will be safe afterwards.

90. ALLSTATE does not have sufficient documentation to refute the opinions of Ms. Bryant's treating physicians and the manufacturer of the conversion van such that they can reasonably delay or deny first-party benefits.

91. ALLSTATE made no reasonable effort provide necessary medical records to Dr. Bernton for a review until encouraged to do so by the Plaintiff.

92. ALLSTATE made no reasonable effort to speak to Ms. Bryant to discern the effect of the collision upon her life.

93. ALLSTATE made no reasonable effort to speak to Ms. Bryant's treating physicians.

94. ALLSTATE made no reasonable effort to have Ms. Bryant examined by a physician of their choice.

95. ALLSTATE has forced Ms. Bryant into litigation to reasonably resolve her claim for benefits.

96. The denial of covered benefits without a reasonable basis was a violation of C.R.S. § 10-3-1115, authorizing remedies to Ms. Bryant as provided by C.R.S. § 10-3-1116.

8

## DAMAGES SOUGHT

97. Plaintiff hereby incorporates all preceding paragraphs as though fully alleged herein.

98. Plaintiff seeks to recover damages for her contract benefits due her under the UIM contract with ALLSTATE.

99. Plaintiff seeks to recover economic damages (INCLUDING LOSS OF USE OF VEHICLE) for her contract benefits due her under the property damage/auto collision contract with ALLSTATE.

100. Plaintiff seeks damages for her economic and non-economic damages caused by the March 30, 2014 collision in accordance with her UIM contract with Defendant ALLSTATE.

101. Plaintiff seeks damages for Defendant ALLSTATE's violation of C.R.S. § 10-3-1115 and C.R.S. § 10-3-1116 in accordance with the statutory laws of Colorado.

**WHEREFORE**, Plaintiff prays for judgement against Defendant ALLSTATE on her contract owed in her automobile policies with Defendant ALLSTATE, damages under C.R.S. §10-3-1115 and C.R.S § 10-3-1116, pre and post judgment interest at the highest rate allowed by law, costs, expert witness fees and such other and further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED TO A JURY OF SIX**

Respectfully submitted this 31st day of March, 2017.

RAMOS LAW, LLC

By: _____
James P. Colgan, Esq.

Plaintiff's Address:
16107 Falcon Highway
Peyton, Colorado 80831

9